1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 03, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SYDNEY N.,[1]

　　　　　　Plaintiff,

　　v.

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

　　　　　　Defendant.

No. 2:22-cv-00234-MKD

ORDER AFFIRMING DECISION
OF COMMISSIONER

**ECF Nos. 10, 15**

　　　Before the Court are the parties' briefs.[2]  ECF Nos. 10, 15.  The Court, having reviewed the administrative record and the parties' briefing, is fully

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.  *See* LCivR 5.2(c).

[2] Plaintiff's opening brief is labeled a Motion for Summary Judgment.  ECF No. 10.  However, the supplemental rules for Social Security actions under 42 U.S.C. §

ORDER - 1

informed.  For the reasons discussed below, the Court affirms the Commissioner's

decision.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

---

405(g) went into effect on December 1, 2022; Rule 5 and Rule 6 state the actions

are presented as briefs rather than motions.  Fed. R. Civ. P. Supp. Soc. Sec. R. 5, 6.

ORDER - 2

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot,

ORDER - 3

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude

ORDER - 4

a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 11, 2017, Plaintiff applied for both Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of August 20, 2016.  Tr. 565, 704-18, 1250.  The application was denied initially, and on reconsideration. Tr. 626-32, 636-41.  Plaintiff appeared before an administrative law judge (ALJ) on October 23, 2018.  Tr. 510-48.  On November

ORDER - 6

30, 2018, the ALJ denied Plaintiff's claim.  Tr. 413-38.  Plaintiff appealed the

denial, resulting in a remand from this Court.  Tr. 1357-76.  While the appeal was

pending, Plaintiff filed a subsequent Title XIV application; Disability

Determination Services (DDS) determined Plaintiff was disabled as of July 23,

2019.  Tr. 1250.  Plaintiff appeared for a remand hearing on July 20, 2022.  Tr.

1280-1311.  The ALJ considered only the period of August 20, 2016 through July

22, 2019.  Tr. 1250.  On August 17, 2022, the ALJ issued a partially favorable

decision, finding Plaintiff became disabled on July 13, 2018, and was not disabled

prior to that date.  Tr. 1247-79.

At step one of the sequential evaluation process, the ALJ found Plaintiff,

who met the insured status requirements through September 30, 2018, has not

engaged in substantial gainful activity since August 20, 2016.  Tr. 1252.  At step

two, the ALJ found that Plaintiff has the following severe impairments: major

depressive disorder, generalized anxiety disorder, PTSD, migraines, fibromyalgia,

and obesity.  Tr. 1253.

At step three, the ALJ found that prior to June 14, 2019, Plaintiff did not

have an impairment or combination of impairments that met or medically equaled

the severity of a listed impairment.  Tr. 1254.  The ALJ then concluded that prior

to July 13, 2018, Plaintiff had the RFC to perform light work with the following

limitations:

ORDER - 7

> [Plaintiff] could never climb ladders, ropes or scaffolds; she could
> occasionally balance; and frequently stoop, kneel, crouch and crawl;
> she could have no exposure to hazards (e.g., unprotected heights,
> moving mechanical parts); and she could have only superficial contact
> with the public.

Tr. 1257.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 1266.

At step five, the ALJ found that, considering Plaintiff's age, education, work

experience, RFC, and testimony from the vocational expert, there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform

prior to the established onset date, such as housekeeping cleaner, marker, and

routing clerk.  Tr. 1267.  Alternatively, the ALJ offered an alternative RFC limiting

Plaintiff to:

> sedentary work with no climbing of ladders, ropes or scaffolds;
> occasional balancing; frequent stooping, kneeling, crouching and
> crawling; cannot have concentrated exposure to vibration and extreme
> cold/heat; no pulmonary irritants or hazards (e.g., unprotected heights,
> moving mechanical parts); simple, routine tasks; occasional,
> superficial contact with the public and coworkers; off task 10 % of the
> workday; would be absent one day per month.

Tr. 1267.

The expert testified that Plaintiff would still be able to perform jobs

such as document preparer, surveillance system monitor, addresser, and

sorter. *Id.*

Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the established onset date of July 13, 2018.  Tr. 1268.  The ALJ found Plaintiff's RFC was disabling beginning July 13, 2018, and she met a listing beginning June 14, 2019.  Tr. 1268-69.

Per 20 C.F.R. §§ 404.984, 416.1484, the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, prior to the established onset date.  Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ conducted a proper step-three analysis;

3. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

4. Whether the ALJ conducted a proper step-five analysis.

ECF No. 10 at 6.

ORDER - 9

# DISCUSSION

## A. Medical Opinion Evidence

Plaintiff contends the ALJ erred in his consideration of the opinion of John Severinghaus, Ph.D.  ECF No. 10 at 8-11.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

On June 28, 2017, Dr. Severinghaus, an examining psychologist, conducted a psychological examination and rendered an opinion on Plaintiff's functioning. Tr. 1016-23. Dr. Severinghaus diagnosed Plaintiff with PTSD with panic attacks, early onset, chronic, severe; probable dissociative identity disorder, moderate severity; persistent depressive disorder, early onset, chronic, moderate severity; past/remote polysubstance abuse, in stable, full remission; continued frequent/daily use of marijuana as self-medication and without recreational intent; and history of seizure-like episodes- rule out pseudoseizures. Tr. 1020-21. Dr. Severinghaus opined Plaintiff has marked limitations in her social functioning; she would have difficulty interacting with supervisors, coworkers, or the public on a regular basis, even in low demand settings; her impairments interfere with engaging in life tasks and activities; Plaintiff is susceptible to disruption of focus/concentration;

persistence and pace are reduced in some areas but not others; and she is able to manage funds. Tr. 1021. The ALJ gave Dr. Severinghaus' opinion little weight. Tr. 1264. As Dr. Severinghaus' opinion was contradicted by the opinion of Dr. Winfrey, Tr. 526-29, the ALJ was required to give specific and legitimate reasons, supported by substantial evidence, to reject the opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Severinghaus' opinion was based on a one-time examination and lacked the perspective of an established relationship/history. Tr. 1264. The number of visits a claimant had with a particular provider is a relevant factor in assigning weight to an opinion. 20 C.F.R. § 416.927(c). However, the fact that these evaluators examined Plaintiff one time is not a legally sufficient basis for rejecting the opinion. The regulations direct that all opinions, including the opinions of examining providers, should be considered. 20 C.F.R. § 416.927(b), (c). The ALJ considered Dr. Severinghaus' opinion but gave it less weight in part because it was based on a one-time examination. As this was not the only supported reason the ALJ gave to reject the opinion, as discussed further *infra,* the ALJ reasonably gave the opinion less weight due to it being based on a one-time examination.

Second, the ALJ found Dr. Severinghaus' opinion was inconsistent with the medical evidence. Tr. 1264. A medical opinion may be rejected if it is

unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of*

*Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278

F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.

2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Moreover, an

ALJ is not obliged to credit medical opinions that are unsupported by the medical

source's own data and/or contradicted by the opinions of other examining medical

sources.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Although Dr.

Severinghaus opined Plaintiff has limitations in her concentration/focus and her

"persistence and pace are reduced in some areas but not others," her Trail Making

Test demonstrated normal scores, her memory scores were generally normal, and

she had no errors of significance on her mental status examination.  Tr. 1020-21,

1264.  Plaintiff performed counting, reciting the alphabet, serial sevens, and

months of the year correctly, and performed six digits forward and five backward,

which was the maximum assessed.  Tr. 1022.  There was thus no evidence from the

testing during the examination to support a finding of impairment in

focus/concentration nor persistence/pace.  Dr. Severinghaus also noted during the

examination that Plaintiff's activities of daily living and independence were intact.

Tr. 1264 (citing Tr. 1020-21).  The ALJ also found Dr. Severinghaus' opinion was

contradicted by Dr. Winfrey's opinion, as discussed further *infra*.  Tr. 1264.  This

was a specific and legitimate reason to reject Dr. Severinghaus' opinion.

1    Third, the ALJ found Dr. Severinghaus' opinion was inconsistent with the

2  record as a whole.  *Id.* An ALJ may discredit physicians' opinions that are

3  unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195.  Moreover, the

4  extent to which a medical source is "familiar with the other information in [the

5  claimant's] case record" is relevant in assessing the weight of that source's medical

6  opinion.  *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).  The ALJ found Dr.

7  Severinghaus' opinion that Plaintiff has marked limitations in social functioning

8  was inconsistent with Plaintiff's reported social activities, including visits with

9  friends, being a bridesmaid, and taking a trip to Reno.  Tr. 1264.  The ALJ also

10  referenced an earlier discussion of Plaintiff's activities.  *Id.*  Earlier in the decision,

11  the ALJ discussed Plaintiff's ability to get out of the house regularly, travel

12  independently, shop once or twice per week, attend appointments, go on walks and

13  other small outings, visit friends' homes, and play cards.  Tr. 1256.  Plaintiff was

14  observed as cooperative and pleasant at examinations.  Tr. 1255-56.  Plaintiff

15  contends her ability to engage with family and friends is not inconsistent with

16  marked limitations in an ability to engage in social functioning in a work

17  environment.  ECF No. 10 at 11.  However, the ALJ has offered a reasonable

18  interpretation of the evidence and opinion, when considering the range of activities

19  and socializing Plaintiff was able to handle outside of the home.  *See Tommasetti*,

20

ORDER - 14

533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision).

Fourth, the ALJ gave greater weight to Dr. Winfrey's opinion than Dr. Severinghaus' opinion. Tr. 1264. Generally, an ALJ should accord more weight to the opinion of an examining physician than to that of a non-examining physician. *See Andrews*, 53 F.3d at 1040-41. However, the opinion of a nonexamining physician may serve as substantial evidence if it is "supported by other evidence in the record and [is] consistent with it." *Id*. at 1041. The ALJ found Dr. Severinghaus' opinion was contradicted by Dr. Winfrey, who opined Plaintiff had intact social functioning. Tr. 1264. The ALJ found Dr. Winfrey supported her opinion with citations to the record, and she based her opinion on a review of the entire longitudinal record. *Id*. The ALJ reasonably gave Dr. Winfrey's opinion more weight than Dr. Severinghaus' opinion.

Further, even if the ALJ erred in rejecting Dr. Severinghaus' opinion, Plaintiff has not demonstrated the error is harmful. Plaintiff focused on Dr. Severinghaus' opinion that Plaintiff has a marked limitation in her social functioning and bolded the portion of the opinion that states "[Plaintiff] would have difficulty interacting with supervisors, coworkers, or the public on a regular basis, even in low demand settings." ECF No. 10 at 9. A single marked limitation is not in itself disabling, as indicated by the listing of mental impairments, which

requires two marked limitations to meet a listing. *See* 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00A2b. Plaintiff contends the opinion is disabling because "she is unable to respond appropriately to supervision, coworkers, and usual work situations." ECF No. 10 at 11. However, Dr. Severinghaus did not opine Plaintiff is completely unable to respond appropriately to supervisors and coworkers, but rather only opined that she would have difficulty with them. Tr. 1021. Dr. Severinghaus' opinion largely contains vague statements, such as the opinion that Plaintiff is susceptible to disruption of focus/concentration, without any further details as to the frequency of the disruption. *Id.* It also contains statements that are explicitly noted as being Plaintiff's self-report, such as the statement that Plaintiff reports having a service dog she relies on. *Id.*

The ALJ also gave an alternative, significantly more restricted RFC that included limitations that appear to account for Dr. Severinghaus' opinion. Tr. 1267. The vocational expert testified there were still jobs that existed for such an RFC, *id.,* indicating the opinion is not disabling. Plaintiff is not entitled to remand on these grounds.

**B. Step Three**

Plaintiff contends the ALJ erred in failing to find Plaintiff's impairments equaled Listings 11.02 and 14.09D prior to the established onset date. ECF No. 8

ORDER - 16

at 12-14.  At step three, the ALJ must determine if a claimant's impairments meet

or equal a listed impairment.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The Listing of Impairments "describes for each of the major body systems

impairments [which are considered] severe enough to prevent an individual from

doing any gainful activity, regardless of his or her age, education or work

experience."  20 C.F.R. §§ 404.1525, 416.925.  "Listed impairments are

purposefully set at a high level of severity because 'the listings were designed to

operate as a presumption of disability that makes further inquiry unnecessary.'"

*Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*,

493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because

they automatically end the five-step inquiry, before residual functional capacity is

even considered."  *Kennedy,* 738 F.3d at 1176.  If a claimant meets the listed

criteria for disability, she will be found to be disabled.  20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets

each characteristic of a listed impairment relevant to his or her claim."  *Tackett,*

180 F.3d at 1099 (emphasis in original); 20 C.F.R. §§ 404.1525(d), 416.925(d).

"To *equal* a listed impairment, a claimant must establish symptoms, signs and

laboratory findings 'at least equal in severity and duration' to the characteristics of

a relevant listed impairment . . . ."  *Tackett*, 180 F.3d at 1099 (emphasis in original)

(quoting 20 C.F.R. § 404.1526(a)).  "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment."  *Id*.  However, "[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three."  *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)).

The claimant bears the burden of establishing her impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3."  Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

While Listing 11.02 addresses seizures, it is the most closely analogous listing for migraines.  HALLEX DI 24505.015(B)(7)(B)(example 2).  Listing 11.02 requires migraine headaches be "documented by detailed description of a typical [migraine headache], including all associated phenomena."  20 C.F.R. § 404,

ORDER - 18

Subpt. P, App. 1, § 11.02.  Listing 11.02B requires the migraines occur at least once a week for at least three consecutive months, despite compliance with treatment.  *Id.*  Listing 11.02D requires the migraines occur at least once every two weeks for at least three consecutive months, despite adherence to prescribed treatment, and the claimant must have a marked limitation in physical functioning or one of the four areas of mental functioning.  *Id.*

Listing 14.09D requires repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: 1) Limitation of activities of daily living; 2) Limitation in maintaining social functioning; or 3) Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.  20 C.F.R. § 404, Subpt. P, App. 1, § 14.09D.

Here, the ALJ concluded that Plaintiff's impairments and combinations of impairments did not meet or equal any listings, including Listings 11.02 and 14.09D.  Tr. 1254.  Regarding Listing 11.02, the ALJ found Plaintiff's migraines did not cause a marked impairment in her functioning prior to the established onset date.  *Id.*  The ALJ reasoned that examinations showed Plaintiff was generally in no acute distress with no evidence of photophobia, nausea, or vomiting, and a consultative examination documented no pain behavior or impairment despite

Plaintiff reporting a migraine. *Id.* While Plaintiff alleges she experienced disabling migraines during the relevant period, she reported to providers her headaches were generally controlled and "not a major issue for her." *Id.* (citing Tr. 1866).

Plaintiff contends her impairments equaled Listing 11.02 because she reported she had moderate to severe headaches three times per month in March 2018, and in July 2017, she reported migraine episodes two to three times per month. ECF No. 10 at 12-13 (citing Tr. 1018, 1866, 1866). In 2017, Plaintiff's reported episodes involved spasms, inability to talk, some instances of frothing at the mouth, disorientation, exhaustion, and incontinence on one occasion. ECF No. 10 at 13 (citing Tr. 1018). However, Plaintiff has failed to meet her burden in demonstrating her impairments equaled Listing 11.02B, which requires episodes that occur at least weekly.

Plaintiff also contends she had three grand mal seizures per month, thereby meeting or equaling Listing 11.02 due to her seizures. ECF No. 10 at 13 (citing Tr. 1018). Plaintiff does not explain which portion of the listing she believes her reported grand mal seizures meet/equal. The subsections of the listing that address tonic-clonic seizures require that the seizures occur at least once per month for at least three months, or at least once every two months for at least four consecutive months and the individual has a marked limitation in one of the five areas of

ORDER - 20

functioning.  Listing 11.02A, C.  Plaintiff cites to a single report she describes as grand mal seizures, and does not cite to any evidence she meets the duration requirement or frequency requirement.  Plaintiff also does not address her adherence to prescribed treatment.  Additionally, the listing requires "at least one detailed description of your seizures from someone, preferably a medical professional, who has observed at least one of your typical seizures.  If you experience more than one type of seizure, we require a description of each type." Listing 11.00H2.  Plaintiff does not cite to a description of her seizures in the record.  Plaintiff has not met her burden in demonstrating she met Listing 11.02.

As to Listing 14.09D, the ALJ found Plaintiff's fibromyalgia is not equal in severity to Listing 14.09D, which requires repeated manifestations of inflammatory arthritis, two constitutional symptoms/signs, and at least one marked limitation in one of the three areas of functioning.  Tr. 1254.  Plaintiff contends she has more than two of the constitutional signs/symptoms and has marked limitations in her daily activities, as well as limitations due to frequent migraines.  ECF No. 10 at 14. However, Plaintiff has not met her burden in demonstrating she has a marked limitation in her activities of daily living.  As discussed further *infra*, the ALJ reasonably found Plaintiff's activities were inconsistent with her allegations of disability.  Plaintiff is not entitled to remand on these grounds.

ORDER - 21

**C. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims. ECF No. 10 at 14-20. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester*, 81 F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear

ORDER - 22

and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 1258.

### 1. Inconsistent Objective Medical Evidence

The ALJ found Plaintiff's symptom claims were inconsistent with the objective medical evidence. Tr. 1258-62. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680. However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Mental status examinations are objective measures of an individual's mental health. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

The ALJ found that Plaintiff's allegations of disabling mental health symptoms were inconsistent with the objective medical evidence. Tr. 1258-59. Plaintiff did not seek ongoing mental health care prior to the alleged onset date, as discussed further *infra*. The mental status examinations during the relevant period were largely within normal limits. Tr. 1258. Plaintiff generally had normal mood, affect, judgment, orientation, and memory, and she was alert, cooperative, pleasant, and denied having anxiety or depression. Tr. 1258-59 (citing, e.g., Tr.

ORDER - 24

930, 935, 939, 954, 1020).  Plaintiff reported her depression was well-controlled in June 2017.  Tr. 1259 (citing Tr. 1208).  Dr. Winfrey also opined Plaintiff did not have any disabling limitations caused by her mental impairments.  Tr. 1259-60.

Next, the ALJ found Plaintiff's allegations of disabling physical impairments were inconsistent with the objective evidence.  Tr. 1260.  Plaintiff's physical examinations documented numerous normal findings, including no pain behavior, normal gait, sensation, strength, range of motion, and motor abilities, and Plaintiff appeared in no acute distress, and did not appear uncomfortable at multiple appointments.  *Id.* (citing, e.g., Tr. 930, 954, 1019, 1064).  Plaintiff reported her headaches were stable in October 2016, and she reported her headaches improved with medication in October 2017.  Tr. 1260 (citing Tr. 933, 1039).  In March 2018, she reported headaches were not a major issue for her.  Tr. 1260 (citing Tr. 1866).

Plaintiff offers an alternative interpretation of the medical evidence, ECF No. 10 at 16, however, the ALJ's interpretation is reasonable.  *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision).  This was a clear and convincing reason, along with the other reasons offered by the ALJ, to reject Plaintiff's symptom claims.

ORDER - 25

2.  *Activities of Daily Living*

The ALJ found Plaintiff's activities of daily living were inconsistent with her allegations.  Tr. 1261.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

The ALJ found Plaintiff's "high-functioning daily living activities" were inconsistent with Plaintiff's allegations of debilitating pain and worsening mental health symptoms.  Tr. 1261.  Plaintiff reported being able to manage her own personal care and medications, prepare meals, perform household chores, care for pets, rarely drive, shop in stores once or twice per week, attend appointments independently, and attend some social activities with family and friends.  Tr. 1256, 1261.  Plaintiff reported visiting others' homes, going on walks, playing cards, playing video games, managing her own finances, and maintaining a "great"

ORDER - 26

relationship with her boyfriend. *Id.* Plaintiff also reported being a bridesmaid in a wedding and taking a trip to Reno. *Id.* Plaintiff contends the ALJ did not identify specific inconsistencies and contends her "modest activity level" was not inconsistent with her allegations, because she missed many social activities and took frequent breaks during the road trip to the wedding. ECF No. 19 at 17-18. However, the ALJ reasonably found Plaintiff's ability to consistently engage in activities both inside and outside of the home was inconsistent with her allegations of disabling limitations. This was a clear and convincing reason to reject Plaintiff's symptom claims.

### 3. *Lack of Treatment/Non-Compliance with Treatment*

The ALJ found Plaintiff's lack of treatment and non-compliance with treatment was inconsistent with Plaintiff's allegations. Tr. 1258, 1261. Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may serve as a basis to discount the claimant's reported symptoms, unless there is a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). The ALJ found Plaintiff did not engage in regular counseling prior to the established onset date, and she reported no psychiatric medication aside from occasional Xanax and "self-medicating with marijuana daily." Tr. 1258. The ALJ also noted plaintiff was non-compliant with treatment recommendations. Tr. 1261 (citing Tr. 1175-76, 1187-88, 1195, 2700).

ORDER - 27

In August 2017, Plaintiff declined a referral to psychiatry, refused to go to Frontier Behavioral Health, and refused to do additional physical therapy. Tr. 1175-76. In June and July 2018, Plaintiff continued to refuse to see a psychiatrist. Tr. 1187-88, 1195. Plaintiff was also encouraged to see a pain psychologist, which Plaintiff refused, and the provider noted Plaintiff "has a very defensive posture and is dissatisfied with most of our suggestions for her chronic conditions." Tr. 2700-01.

The ALJ also noted Plaintiff's providers would have referred her to a neurologist much earlier if they felt her symptoms were as complex as Plaintiff alleged. Tr. 1260. While Plaintiff contends the ALJ was speculating as to the specialist referral, ECF No. 10 at 17, Plaintiff does not offer any explanation for her lack of counseling prior to the established onset date and her ongoing refusal to see a psychiatrist or pain psychologist despite recommendations to do so. Any error in the ALJ's consideration of the lack of an earlier referral to a specialist is harmless as the ALJ offered other clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's symptom claims.

4. *Employment History*

The ALJ found Plaintiff's minimal work earnings prior to the alleged onset date suggests Plaintiff's unemployment is likely caused by something other than her medical conditions. Tr. 1261 (citing Tr. 724-25). Evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to

1  discredit a claimant's testimony that she is unable to work. *Thomas*, 278 F.3d at

2  959; SSR 96-7 (factors to consider in evaluating credibility include "prior work

3  record and efforts to work"); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.

4  1996); 20 C.F.R. § 404.1529 (work record can be considered in assessing

5  credibility); 20 C.F.R. § 416.929 (same).

6       Plaintiff earned $2,073 in 2013; $7,849 in 2014; $8,938 in 2015; and $8,600

7  in 2016. Tr. 723. Plaintiff did not work at a substantial gainful activity on an

8  ongoing basis for any of the years preceding her alleged onset date. Plaintiff

9  contends the ALJ erred in his reasoning because she has documented earnings, she

10  was born in 1994, and she has a large number of medical records. ECF No. 10 at

11  19. However, Plaintiff does not offer an explanation as to why she did not work at

12  a substantial gainful activity level in the years leading up to her alleged onset date.

13  This was a clear and convincing reason, supported by substantial evidence, to

14  reject Plaintiff's symptom claims.

15       *5. Secondary Gain/Drug-Seeking*

16       The ALJ found there was evidence Plaintiff may be motivated by secondary

17  gain and had engaged in drug-seeking behavior. Tr. 1261. Evidence of being

18  motivated by secondary gain is sufficient to support an ALJ's rejection of

19  testimony evidence. *See Matney ex rel. Matney*, 981 F.2d at 1020. Therefore, the

20  tendency to exaggerate or engage in manipulative conduct during the process is a

permissible reason to discount the credibility of the claimant's reported symptoms. *Tonapetyan*, 242 F.3d at 1148.   Additionally, drug seeking behavior can be a clear and convincing reason to discount a claimant's credibility.  *See Edlund*, 253 F.3d at 1157 (holding that evidence of drug seeking behavior undermines a claimant's credibility).

The ALJ cited to a visit that contains a note from the provider that states, "[c]urrent doctor thinks she is there just to get pain pills." Tr. 1030.  It is unclear if the note is based on the provider reviewing other medical records, or based on Plaintiff's self-report, or if the note has another origin.  Another cited record states, "[r]eiterated today that I will not be prescribing any controlled substances." Tr. 1038.  At the visit, Plaintiff switched "between saying she hates pain meds and asking for more." Tr. 1037.  At another cited visit, Plaintiff was documented as "crying loudly" and her "request for immediate nursing attendance appeared to be fairly demanding and dramatic." Tr. 1622.  Plaintiff reported she was in "terrible pain," and when the provider commented that Plaintiff looked more comfortable than she previously did, Plaintiff "became aggressive" verbally, and she declined a CT scan. Tr. 1623.  She was given one dose of Dilaudid and told to take over the counter pain medication for ongoing pain. *Id.*

At another visit, the provider noted Plaintiff was seeking disability benefits; Plaintiff's testing was stopped "primarily due to subjective reports of physical

symptoms," and the provider noted irregularities in Plaintiff's performance on testing compared to typical results and stated "[t]here are inconsistencies between subjective input and demonstrated abilities, and variances between similar types of tests. Due to this it is difficult to draw many conclusions as to what her actual functional abilities are." Tr. 1148-52.

Plaintiff offers an alternative interpretation of the evidence and contends there is no evidence she engaged in drug-seeking behavior. ECF No. 10 at 17-18. However, the ALJ's analysis of the record is reasonable in finding evidence supports a finding Plaintiff engaged in symptom magnification. *See Tommasetti*, 533 F.3d at 1038. This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims. Plaintiff is not entitled to remand on these grounds.

**D. Step Five**

Plaintiff contends the ALJ erred at step five by relying on vocational expert testimony that was based on an incomplete hypothetical. ECF No. 10 at 20. However, Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom claims. *Id.* For reasons discussed throughout this decision, the ALJ's rejection of Plaintiff's symptom claims, and Dr. Severinghaus' opinion, was legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in finding

ORDER - 31

Plaintiff capable of performing other work in the national economy based on the hypothetical containing Plaintiff's RFC.  Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Brief, **ECF No. 10**, is **DENIED**.

2. Defendant's Brief, **ECF No. 15**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED November 3, 2023.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 32